UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br><br>      Plaintiff,<br><br>  -against-<br><br>MULLOOLY, JEFFREY, ROONEY &<br>FLYNN LLP et al.,<br><br>      Defendant. | 25-CV-5547 (JHR) (BCM)<br><br>**MEMORANDUM AND ORDER RE:**<br>**(1) MOTION FOR DEFAULT; AND**<br>**(2) MOTION TO VACATE DEFAULT** |

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Edward B. Hubbuch, proceeding pro se, commenced this action on July 2, 2025, against a law firm, Mullooly, Jeffrey, Rooney & Flynn LLP (MJRF); a lawyer, Amy Gavlik (Gavlik); and a bank, JP Morgan Chase Bank, N.A. (Chase). Plaintiff alleges that defendants violated the Fair Credit Reporting Act, the Fair Debt Collection Practices Act (FDCPA), and state law in connection with a collection action filed against plaintiff in state court a few months earlier. On August 7, 2025 – 23 days after plaintiff served MJRF with process in this action – he obtained a certificate of default pursuant to Fed. R. Civ. P. 55(a) and filed a motion for a default judgment against MJRF pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. 23.) Five days later, MJRF filed a motion to vacate the default pursuant to Fed. R. Civ. P. 55(c). (Dkts. 33, 34.) For the reasons that follow, defendant's vacatur motion will be granted, thereby mooting plaintiff's default motion.

I.    BACKGROUND

On April 14, 2025, defendant Chase, represented by MJRF, filed a lawsuit in Kings County Civil Court to collect a credit card debt allegedly owed by plaintiff to Chase. *See* Compl. (Dkt. 1) ¶ 11. Two and a half months later – with the Kings County case pending – plaintiff filed this action, alleging that defendants provided untimely and insufficient responses to a Demand for a Bill of Particulars that he served in state court, *see id*. ¶¶ 11-14, 19-20, & Exs. D-E, and failed to respond to his requests for clarification. *Id*. ¶ 15. Plaintiff further alleges that Chase reported his account to

credit bureaus as "charged off," without "any indication that the debt was being actively litigated or formally disputed," *id*. ¶ 17, and refused to correct that tradeline despite demand from plaintiff. *Id*. ¶¶ 18, 29. Plaintiff adds that MJRF sent him a debt collection letter on June 17, 2025, signed by MJRF attorney Gavlik, that did not comply with the FDCPA. *Id*. ¶¶ 22-23 & Ex. H. Taken together, plaintiff alleges, these acts "reflect a systemic abuse of process: weaponizing the court system and federal credit reporting infrastructure not to resolve a valid claim, but to coerce informal settlement through intimidation, reputational damage, and procedural attrition." *Id*. ¶ 30.

Plaintiff served MJRF with a summons and his federal complaint on July 15, 2025, via the New York Secretary of State (*see* Dkt. 8), in accordance with N.Y.C.P.L.R. (CPLR) § 306 and Fed. R. Civ. P. 4(h)(1)(A), making MJRF's answer or other response to the complaint due August 5, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), 12(b). Plaintiff served Gavlik on July 18, 2025 (Dkt. 13), making her response due August 8, 2025. Plaintiff served Chase on July 22, 2025 (Dkt. 12), making its response due August 12, 2025. However, with plaintiff's consent, the Court extended Chase's time to respond to the Complaint to September 11, 2025. (Dkt. 29.)

On August 6, 2025 – one day after MJRF's response was due – plaintiff submitted a declaration requesting a certificate of default against it. (Dkt. 17.)[1] On August 7, 2025 – two days after MJRF's response was due – attorney Robert Arleo appeared on its behalf (Dkt. 18) and submitted a letter "in opposition to the attempt by the Plaintiff to obtain a default judgment against MJRF[.]" (Dkt. 19.) In that letter, attorney Arleo asserted (incorrectly) that MJRF had "30 days" from the date of service (that is, another seven days) to respond to the complaint. At 3:37 p.m. on August 7, 2025, plaintiff again submitted a declaration requesting a certificate of default against

---

[1] The Clerk of Court did not process plaintiff's August 6 request, likely because plaintiff failed to include "a proposed 'Clerk's Certificate of Default,' in a form prescribed by the clerk," as required by Local Civ. R. 55.1(a)(3).

MJRF (Dkt. 21), this time accompanied by a proposed certificate. (Dkt. 20.) The Clerk issued the certificate at 3:43 p.m. the same day. (Dkt. 22.) [2]

At 10:33 p.m. that night, plaintiff filed his motion for a default judgment, writing that MJRF's "refusal to engage in this litigation" reflects "a calculated effort to default strategically and prevent Plaintiff from uncovering the full scope of its abusive operations." Default Mot. ¶ 3. Plaintiff noted that "as of the date of this filing" (that is, six hours and 50 minutes after the entry of default), MJRF had "still not filed any responsive pleading, motion, or application to cure its procedural default." *Id*. ¶ 6.[3] Therefore, plaintiff argued, the Court "is empowered, and indeed compelled, to enter judgment in favor of Plaintiff to vindicate the rule of law, deter future misconduct, and ensure that entities like MJRF LLP are not permitted to exploit the judicial system through silence and evasion." *Id*. ¶ 16. Plaintiff requested $1,000 in statutory damages and $75,000 in actual damages under the FDCPA; $225,000 in punitive damages under state law; costs; and declaratory relief. *Id.* ¶ 26.

On August 8, 2025 – the date on which Gavlik was required to respond to the complaint – Gavlik and MJRF filed a joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that plaintiff lacks Article III standing to sue, *see* U.S. Const. Art. III, § 2, in that he has not alleged any "concrete injury" flowing from defendants' alleged violations of federal and state law. Mem.

---

[2] This was a ministerial act. *See* Fed. R. Civ. P. 55(a) ("[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." Thus, as the Second Circuit explained in *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182 (2d Cir. 2015), the entry of default, upon receipt of the proper documents, is "not discretionary." *Id*. at 186.

[3] *See also* Default Mot. ¶ 12 (MJRF "has made no meaningful effort to cure the default or participate in the litigation."); *id*. ¶ 16 (MJRF's "failure to respond or move to vacate the default – despite having actual notice and retaining counsel – constitutes a willful abandonment of its procedural obligations."); *id*. ¶ 25 (MJRF's "deliberate refusal to engage with this litigation, despite clear notice and opportunity, leaves the Court with no alternative but to grant full relief as requested.").

in Supp. of Mot. to Dismiss (Dkt. 28) at 2-8. On August 10, 2025, plaintiff filed an affirmation arguing that the motion should be stricken, insofar as it was filed on behalf of MJRF, because it is "well-settled" that a defaulted defendant is "not entitled to participate in this action unless and until the default is set aside." (Dkt. 30 ¶¶ 3, 8.)[4] Going further, plaintiff claimed that MJRF's "procedural ambush" (*id.* ¶ 8) was so "prejudicial to the integrity of the case" that the firm should be "judicially estopped from filing a motion to vacate its default under Rule 55(c)." (*Id.* ¶¶ 10, 14.)

In fact, the law is this Circuit is considerably less "well-settled" than plaintiff contends. Defaulted defendants frequently file Rule 12 motions to dismiss after the entry of default, and district courts routinely consider those motions when determining whether the defendant has a meritorious defense (which, as discussed below, is part of the test for vacatur).[5] Nonetheless, on August 11, 2025, MJRF withdrew its motion to dismiss, reserving "the right to refile the said motion upon the vacation of the Clerk's certificate of default" (and noting that defendant Gavlik "retains that portion of the motion to dismiss as it relates to her"). (Dkt. 31.)

---

[4] "An affirmation is a creature of New York state practice that is akin to a declaration under penalty of perjury." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 450 n.2 (S.D.N.Y. 2023). In the New York state courts, an "affirmation" may be used "with the same force and effect as an affidavit," if it is subscribed under penalty of perjury using the language prescribed by CPLR § 2106. In the federal court, a "declaration" may be used with the same force and effect as an affidavit, if it is subscribed under penalty of perjury using the language prescribed by 28 U.S.C. § 1746. Plaintiff's August 10 submission was not subscribed under penalty of perjury and thus did not comply with either state or federal law. Moreover, although labeled an "affirmation," the document was in substance a memorandum of law, and should have been filed as such. *See* Local Civ. R. 7.1(a)(4); *Mata*, 678 F. Supp. 3d at 450 n.2 ("The Local Civil Rules of this District require that 'the cases and other authorities relied upon' in opposition to a motion be set forth in a memorandum of law.") The Court notes that both plaintiff and defendant MJRF have made this mistake, submitting "affirmations" that (depending on their content) should have been either filed as declarations or as memoranda of law. (*See* Dkts. 30, 37, 39.) In the future, all parties must comply with Local Civ. R. 7.1.

[5] *See*, *e.g.*, *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 186, 190, 194 (E.D.N.Y. 2025); *Cabrera v. Freedom Mortg. Corp.*, 2024 WL 1805558, at *1 (S.D.N.Y. Apr. 25, 2024); *Perkins v. Rochester Gen. Hosp.*, 627 F. Supp. 3d 243, 247, 249 (W.D.N.Y. 2022); *CIT Bank, N.A. v. Min*, 2016 WL 11796306, at *1, *3-4 (S.D.N.Y. Aug. 3, 2016); *Allen v. Norman*, 2012 WL 3525584, at *6 (S.D.N.Y. July 23, 2012), *adopted,* 2012 WL 3526521 (S.D.N.Y. Aug. 15, 2012), *aff'd,* 548 F. App'x 25 (2d Cir. 2013).

On August 12, 2025, MJRF filed its motion to vacate the certificate of default pursuant to Rule 55(c), supported by a memorandum of law (Def. Rule 55(c) Mem.) (Dkt. 34), together with its opposition to plaintiff's default judgment motion. (Dkt. 35.) In support of its vacatur motion, MJRF argues that its default was not willful; that its brief delay in responding to the complaint did not prejudice plaintiff (who voluntarily granted a 30-day extension to co-defendant Chase); and that it has meritorious defenses to plaintiff's claims, as outlined in its now-withdrawn motion to dismiss. Def. Rule 55(c) Mem. at 2-6.

On August 13, 2025, in the interest of "efficient resolution of the parties' dispute," the Court directed plaintiff and MJRF to meet and confer in good faith in an effort to resolve the default motion and the vacatur motion without further litigation. *See* 8/13/25 Order (Dkt. 36) at 4. In that order, the Court reminded the parties that "default judgments are disfavored and that this Court, like all courts within the Second Circuit, prefers "that litigation disputes be resolved on the merits, not by default." *Id*. (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)).

The parties met and conferred on August 18, 2025, but were unable to resolve anything. According to plaintiff, he "approached the conference in good faith and was open to resolving the matter on reasonable terms," but attorney Arleo, "flatly refused to offer any concessions, including any stipulation to file an Answer, and made no effort to resolve the pending motions short of unconditional vacatur." Pl. Rule 55(c) Aff. (Dkt. 37) ¶ 9. According to attorney Arleo, it was plaintiff who was unreasonable, in that he "conditioned any agreement to set aside the certification of default upon paying him for his time drafting and filing papers and, importantly, agreeing not to file any motion to dismiss the Complaint." (Dkt. 39 ¶ 12.)

On August 20, 2025, plaintiff filed a reply brief in further support of his motion for default judgment, in which he again argues – repeatedly – that MJRF's default was "willful and

strategically calculated." Pl. Default Reply (Dkt. 43) at 1.[6] In the same brief, plaintiff accuses the firm of "tactical maneuvering," "procedural gamesmanship," and "cynical procedural trickery," *id*. ¶¶ 4-6. Indeed, according to plaintiff, MJRF's conduct "fits squarely within" the precedent established by *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504 (2d Cir. 1991). *Id*. ¶ 5.[7]

## II.    LEGAL STANDARDS

A federal district court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Second Circuit has established a three-part test for determining whether there is good cause under this rule: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in

---

[6] *See also* Pl. Default Reply ¶ 5 (MJRF's "pre-default silence" constituted "calculated tactical maneuvering"); *id*. ¶ 11 (MJRF "seeks to cloak its willful default in the language of procedural ambiguity"); *id*. ¶ 12 (MJRF's "procedural conduct reflects a calculated attempt to manipulate its posture before the Court"); *id*. ¶ 21 (MJRF's default was "a calculated maneuver – part of a broader litigation strategy designed to suppress discovery, evade judicial scrutiny, and weaponize procedural ambiguity against unrepresented parties."); *id*. ¶ 26 (MJRF's default was "a deliberate evasion of judicial oversight, executed through procedural silence, post-default aggression, and intimidation of a *pro se* litigant").

[7] It is difficult to understand how plaintiff could have come to this conclusion if he actually read *Action*. Marc Rich was a commodities trader who fled to Switzerland in 1983 to avoid a criminal tax fraud indictment. That same year, he was sued civilly (over a rice contract) and was served with process on August 29, 1983, but failed to respond to the complaint for a year and a half. *Action*, 951 F.2d at 505. After plaintiffs moved for a default judgment on January 22, 1985, Rich claimed that the court lacked subject matter jurisdiction because he had relinquished his United States citizenship. *Id*. Three years later, after an evidentiary hearing, the district judge found that Rich was still a U.S. citizen, and entered a default judgment against him. *Id*. Thereafter, the court denied Rich's motion to set aside the default judgment. *Id*. at 505-06. In the district court, Rich admitted that "he deliberately chose not to appear in the action because he faced possible indictment upon return to New York," *id*. at 507, and that, even if the default were vacated, "he would not appear, either for discovery or for trial." *Id*. at 508. Additionally, Rich "made no showing of a meritorious defense." *Id*. On this record – which could hardly be more different than the record now before this Court – the Second Circuit affirmed the default judgment against Rich. *Id*. at 505, 509.

good faith and whether the entry of default would bring about a harsh or unfair result." *Id.* This standard is applied "more rigorously" where a default judgment has already been entered, *id.*, and less rigorously where, as here, a certificate of default has been issued under Rule 55(a), but no judgment has yet been entered. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (reversing default judgment predicated on "a ten-day delay in submitting an amended answer" where trial court failed to apply the more "lenient standard of Rule 55(c)"). Regardless of the procedural posture of the case, "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277. Thus, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.* 10 F.3d at 96.

"A motion to set aside an entry of default is subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A)." *Johnson v. New York Univ.*, 324 F.R.D. 65, 67 n.2 (S.D.N.Y. 2018) (quoting *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 335 n.1 (S.D.N.Y. 2013)), *aff'd*, 800 F. App'x 18 (2d Cir. 2020); *accord Li v. Fleet New York Metro. Reg'l Center LLC*, 2022 WL 1666963, at *2 n.2 (E.D.N.Y. May 25, 2022) (collecting cases).

MJRF's motion to vacate the certificate of default, if granted, will moot plaintiff's motion for a default judgment. *See, e.g.*, *Sec. & Exch. Comm'n v. Patel*, 2022 WL 2704099, at *1 (D. Conn. July 12, 2022); *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, 2019 WL 1099944, at *1 (S.D.N.Y. Mar. 8, 2019); *Westchester Fire Ins. Co. v. Tyree Serv. Corp.*, 304 F.R.D. 111, 114 (E.D.N.Y. 2014). Consequently, the Court addresses the vacatur motion first.

## III.    ANALYSIS

Here, all three factors weigh decisively in favor of vacatur. First, MJRF's default was not willful. "'[W]illfulness,' in the context of a default . . . refer[s] to conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers*

*& Allied Craftworkers Loc. 2*, 779 F.3d at 186 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d

Cir. 1998)). MJRF's belief that it had 30 days to respond to the complaint was mistaken.[8] However,

nothing in the record suggests that its mistake was "more than merely negligent or careless."

*McNulty*, 137 F.3d at 738. Plaintiff's claim that MJRF was engaged in "a calculated effort to default

strategically and prevent Plaintiff from uncovering the full scope of its abusive operations,"

Default Mot. ¶ 3, is soundly contradicted by the vigorous efforts that MJRF made, beginning on

August 8, 2025 (a mere 24 days after it was served with process) to shoulder its litigation

responsibilities by filing a motion to dismiss and a motion to vacate the default. *See Enron Oil*

*Corp*., 10 F.3d at 98 (defendant's prompt motion to "set aside the entry" supported conclusion that

he "did not willfully default").[9]

---

[8] In an email to plaintiff sent early in the morning on August 8, 2025 (Dkt. 25-1), and in a letter to the district judge filed several hours later (Dkt. 26), MJRF relied on *Robles v. Lambsbreath LLC*, 2025 WL 1151119, at *1 (S.D.N.Y. Mar. 6, 2025), *adopted*, 2025 WL 1150711 (S.D.N.Y. Apr. 18, 2025), for its understanding that because it was served through the New York Secretary of State, it has 30 days to respond to the complaint pursuant to CPLR § 3012(c). *Robles* did indeed so state. However, as this Court explained in its 8/13/25 Order, "the portion of *Robles* upon which MJRF relie[d] is *dicta*, in that the plaintiff in that case did not seek a default judgment until defendant obtained a negotiated extension of its time to respond to the complaint, and then failed to respond on the extended date." 8/13/25 Order at 2 n.1. Moreover, *Robles* is an outlier. Rule 12(a)(1)(A), which controls the timing of responsive pleadings in this Court, makes no distinction between service upon the Secretary of State and other forms of service. *See*, *e.g*., *Acceptance Indem. Ins. Co. v. Crammer OConner Fiber Genesis*, 2022 WL 14058786, at *1 (E.D.N.Y. Oct. 24, 2022); *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *2 (S.D.N.Y. June 5, 2018), *order clarified on other grounds,* 2018 WL 3105070 (S.D.N.Y. June 25, 2018); *Biberman v. 150 RFT Varick Corp.*, 2017 WL 11638666, at *1 (S.D.N.Y. Feb. 13, 2017).

[9] As noted above, MJRF's (now withdrawn) motion argues that plaintiff lacks constitutional standing to sue. If so, "the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022). Moreover, because lack of standing "relates to the power of the district court," the issue cannot be waived, *Rogers v. LVNV Funding, LLC*, 2022 WL 2292836, at *3 (E.D.N.Y. June 24, 2022), and must be addressed by the Court, *sua sponte*, even if the defendant is in default. *See*, *e.g*., *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024) (notwithstanding defendant's default, district court properly refused to grant a default judgment to plaintiff on a claim as to which he lacked Article III standing).

Second, plaintiff will not be prejudiced by a vacatur of the certificate of default. "[D]elay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98 (reversing district court's denial of motion to vacate default, even though "the result we reach will cause plaintiff some delay"). In this case, moreover, there has been no appreciable delay, making prejudice a non-issue. *See Cupp v. Plastiras*, 2024 WL 4280947, at *4 (N.D. Cal. Sept. 23, 2024) ("[B]ecause this case in its earliest stages – Plaintiff moved for entry of default the day after Defendants' answer was due – there is no prejudice to Plaintiff in setting aside the default."). Unsurprisingly, plaintiff makes no showing that MJRF's conduct will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks and citations omitted). Instead, he complains that he has been prejudiced by MJRF's *post-default* conduct, including its Rule 55(c) motion to vacate, which obliged him to "draft and file a detailed opposition." Pl. Rule 55(c) Aff. ¶ 34. This is sophistry. The obligation to respond to a Rule 55(c) motion cannot constitute the prejudice necessary to defeat such a motion.

Finally, MJRF raises a potentially meritorious defense. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. This is a "low threshold." *Cabrera*, 2024 WL 1805558, at *3 (quoting *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 198 (S.D.N.Y. 2021)). Because lack of standing is a "complete defense" to plaintiff's claims, and because MJRF's anticipated motion to dismiss credibly advances that defense, MJRF has satisfied the third criterion for vacatur of the default. *See Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 262 (E.D.N.Y. 2024) (granting motion to vacate default where defendant "raised a meritorious defense based on standing"); *Lawtone-Bowles v. Seneca Cty. Corr. Div.*, 2021 WL 4034525, at *3 (W.D.N.Y. Sept. 3, 2021) (granting motion to vacate default where

defendants' "assertion that [p]laintiff . . . lacks standing to assert any claim . . . would constitute a complete defense to this action").

In sum, no "doubt exists as to whether [MJRF's] default should be granted or vacated." *Enron Oil Corp.*, 10 F.3d at 96. Indeed, if any party has been guilty of "tactical maneuvering" and "procedural gamesmanship," Pl. Default Reply ¶¶ 4-5, that party is plaintiff Hubbard, who rushed to default MJRF a mere 23 days after serving it with process, in the face of correspondence making it abundantly clear that the firm was ready, willing and able to defend the case. Less than seven hours later, plaintiff urged this Court to enter a $301,000 default judgment against MJRF because it had "still" not filed a responsive pleading, motion, or Rule 55(c) application. Default Mot. ¶ 6. Then, when MJRF did file its Rule 55(c) application, plaintiff opposed it on the ground (among others) that he had been "forced" to "draft and file a detailed opposition to [that] very motion," constituting prejudice. Pl. Rule 55(c) Aff. ¶ 34.

This Court does not condone MJRF's failure to respond to the complaint – or obtain an extension – on or before August 5, 2025. But "litigation in federal court is not a 'gotcha game.'" *Magee v. Walt Disney Co.*, 2020 WL 6047428, at *2 (S.D.N.Y. Oct. 13, 2020) (Nathan, J.) (denying pro se plaintiff's request for a default judgment premised on defendants' six-week delay in answering the complaint); *see also Cupp*, 2024 WL 4280947, at *3 (Whether or not defendant "genuinely believed service was improper," it was "unreasonable for [the] plaintiff to run into court and obtain entry of default on the first available date, especially where, as here, the plaintiff is in communication with the defendants and could have easily advised the defendants in advance of his intent to move for entry of default. Federal court litigation is not a game of 'gotcha.'"). Consequently, the certificate of default hastily obtained by plaintiff will be set aside.

**IV.    CONCLUSION**

Defendant MJRF's motion to vacate the certificate of default (Dkts. 33, 34) is GRANTED, and plaintiff's motion for a default judgment (Dkt. 23) is DENIED as moot. For the sake of efficiency, MJRF's motion to dismiss the complaint will be due on **September 25, 2025** (which is also when Chase's response to the complaint is now due). Unless the parties otherwise stipulate, or the Court otherwise orders, plaintiff's response to the motion(s) will be due on **October 9, 2025**. Defendants' reply briefs – including defendant Gavlik's reply in further support of her motion to dismiss – will be due on **October 16, 2025**. *See* Local Civ. R. 6.1(b).

Dated: New York, New York
      September 8, 2025             **SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**